**UNITED STATES of America**

v.

**Welton ZOLICOFFER, Appellant.**

**No. 88–5707.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 10, 1989.

Decided March 9, 1989.

James V. Wade (argued), Federal Public Defender's Office, Harrisburg, Pa., for appellant.

James J. West, Gordon A.D. Zubrod (argued), U.S. Atty.'s Office, Harrisburg, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and POLLAK, District Judge *.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Welton Zolicoffer appeals from his conviction, following a jury trial, of seven offenses relating to trafficking in cocaine. Two counts dealt with possession with intent to distribute and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 respectively; four counts charged use of a telephone to facilitate distribution of cocaine in violation of 21 U.S.C. § 843(b); and one count charged violation of the Travel Act, 18 U.S.C. § 1952(a)(3).

### I.

Even were we not required to view the evidence most favorably to the government as the verdict winner, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), there would be overwhelming evidence of Zolicoffer's involvement in the distribution of cocaine. Zolicoffer, a resident of Florida, was the supplier of large amounts of cocaine to Ned Oyler, a resident of Roxbury, Pennsylvania. Oyler, together with his wife Marilou, maintained a network which distributed over twenty kilograms of cocaine purchased from Zolicoffer beginning in late 1982 or early 1983. In February 1987, David and Sheila Schroll, two distributors for Oyler, approached law enforcement authorities, confessed their involvement in

* Hon. Louis H. Pollak, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

drug trafficking, and described Oyler's activities, including his association with Zolicoffer. David Schroll agreed to work undercover and taped his drug-related conversations with both Oyler and Zolicoffer. A search by federal agents of the Oylers' residence and business uncovered Oyler's drug records, which included references to his dealings with Zolicoffer. The Oylers thereafter agreed to cooperate with the agents.

At that time, Oyler owed Zolicoffer $37,000 for drugs Zolicoffer had previously supplied. Both Oyler and his wife spoke with Zolicoffer in several separate taped telephone conversations about payment of the $37,000 owed to him. During one of these conversations, on February 11, 1988, it was arranged that Zolicoffer would come to Pennsylvania the following day to pick up the money. On February 12 Zolicoffer was arrested upon his arrival at the Harrisburg International Airport, and thereafter charged with the crimes at issue.

## II.

Zolicoffer argues first that the trial court erred in admitting evidence of other crimes. At trial, Ned Oyler testified that Zolicoffer told him that he had participated in another cocaine deal and had received fifty kilograms as a commission. In addition, David Schroll testified about meeting with Zolicoffer to discuss obtaining marijuana and dilaudid. Schroll testified that Zolicoffer told him that marijuana was available, that dilaudid was difficult to obtain and very expensive, and that he was willing to supply Schroll with cocaine. The district court rejected defendant's objections to this testimony, finding that the evidence was admissible as "background." App. at 139. Schroll also testified about a transaction for heroin in which he participated with Zolicoffer. The objection to the latter on the ground that this was inadmissible under Fed.R.Evid. 404(b) was sustained, but it does not appear that the jury was instructed to disregard the testimony. Zolicoffer now argues that the introduction of all of the above evidence was evidence of other crimes which should not have been admitted.

■ While there is no general "background" exception to Rule 404(b), we conclude that the district court did not abuse its discretion in admitting this evidence. The evidence permitted the jury to infer that Zolicoffer had access to drugs, especially cocaine, and that he was willing and hoping to engage in large scale drug transactions. In light of Zolicoffer's defense that he was engaged in a seafood distribution business rather than a drug distribution business, we find this evidence more probative than prejudicial. *See United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir.1988); *United States v. O'Leary*, 739 F.2d 135, 136–137 (3d Cir.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed. 2d 776 (1985); *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir.1982), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983).

■ Zolicoffer also argues that there was insufficient evidence to establish that the telephone calls which were the basis of the four convictions under 21 U.S.C. § 843(b) facilitated the knowing and intentional distribution of cocaine because they related to the attempt to collect the money owed to him by Oyler. This court has held that 21 U.S.C. § 843(b) can be violated by telephone calls facilitating a conspiracy. *See United States v. Pierorazio*, 578 F.2d 48 (3d Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978). Telephone conversations relating to a drug debt can be viewed as facilitating the conspiracy to distribute. *See United States v. Theodoropoulos*, 866 F.2d 587, 595 (3d Cir. 1989). We also reject Zolicoffer's contention that the instructions on a violation of 21 U.S.C. § 843(b) were insufficient. There was no objection and the charge was not plain error.[1]

---

1. Zolicoffer also attacks the constitutionality of the sentencing guidelines. The constitutionality of the sentencing guidelines has now been sustained. *See Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). We need not reach Zolicoffer's argument that the statute violates equal protection on the ground that it only requires that a judge give reason for

## III.

### A.

We turn then to Zolicoffer's challenge to his conviction under the Travel Act. Count II of the indictment charged Zolicoffer with a violation of the Travel Act, 18 U.S.C. § 1952(a)(3), based on his interstate voyage on February 12, 1988 from Florida to Pennsylvania. Zolicoffer argues that there was insufficient evidence to establish that after Zolicoffer's interstate travel, he performed or attempted to perform acts "to promote, manage, and carry on and facilitate the promotion, management and carrying on of" the unlawful narcotics distribution business as alleged in the indictment, and that therefore the government failed to prove an essential element of this offense.

■ We note at the outset that Zolicoffer makes this challenge to his conviction under the Travel Act for the first time on appeal. We are therefore limited by Fed.R. Crim.P. 52(b) to review for "plain errors or defects affecting substantial rights." *See also United States v. Martinez–Zayas*, 857 F.2d 122, 124 (3d Cir.1988). However, the failure to prove one of the essential elements of a crime is the type of fundamental error which may be noticed by an appellate court notwithstanding the defendant's failure to raise it in the district court. *See Strickland v. United States*, 339 F.2d 866, 868 (10th Cir.1965). We therefore consider the substance of Zolicoffer's challenge.

### B.

The Travel Act provides as follows:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the pro-

motion, management, establishment, or carrying on, of any unlawful activity,

and *thereafter performs or attempts to perform any of the acts* specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

18 U.S.C. § 1952(a) (emphasis added).

■ As is clear from the statute, there must be some action taken after the travel to establish a violation of this section. As we stated in *United States v. Wander*, 601 F.2d 1251 (3d Cir.1979), "there are three elements of proof of a Travel Act violation: (1) interstate travel or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of the unlawful activity." *Id.* at 1258. *See also United States v. Porter*, 821 F.2d 968, 975 (4th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988) ("Intent alone does not satisfy the requirements of 18 U.S.C. § 1952. The government must prove that Porter performed or attempted to perform an act in furtherance of illegal activity after he arrived in Georgia."); *United States v. Vanichromanee*, 742 F.2d 340, 349 (7th Cir.1984); *United States v. Cauble*, 706 F.2d 1322, 1351 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

The legislative history demonstrates that Congress intended to include in the crime covered by this statute a separate requirement of action after the interstate travel occurs. *See* H.R.Rep. No. 966, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2664, 2664 ("there is required the commission of an overt act after having traveled or after having used the facilities of interstate or foreign commerce").

---

the selection of a sentence within the guidelines if the range is 24 months or more. Although this challenge was not considered by the Supreme Court, Zolicoffer has no standing to as-

sert this claim because he concedes that the span of his guideline range was 52 months. *See* Appellant's Brief at 34.

■ The government failed to offer evidence of any such acts or attempted acts by Zolicoffer after his interstate travel. Indeed, the record is absolutely barren of any evidence of what Zolicoffer did immediately before his arrest at the airport. Although a government witness testified that Zolicoffer planned to meet Oyler by the telephones in the airport, App. at 277, presumably to receive the $37,000 owed him by Oyler for a prior drug transaction, there was not even any evidence that Zolicoffer was walking in the direction of that prearranged spot when he was arrested.

In arguing that all the elements necessary for a Travel Act conviction have been satisfied, the government states that "Zolicoffer's acts after the interstate travel (e.g., deplaning, entering the terminal, getting his luggage, etc.) were overt acts which were attempts to carry on the unlawful activity. But for his arrest, he would have met with Oyler to collect the $37,000 in drug proceeds." Brief of the United States at 30–31.[2]

In making this argument, the government fails to distinguish between the interstate travel and the act which must be undertaken thereafter, both of which are essential and separate elements of the offense. Every traveler arriving at the airport must deplane and enter the terminal; thus, such actions are more appropriately considered part of the travel than acts taken "thereafter." In order to prove that after arriving in Pennsylvania Zolicoffer acted or attempted to act to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," 18 U.S.C. § 1952(a)(3), as the indictment charged, the government cannot rely on those acts that are inseparable from the interstate travel itself.

This is not to say that the government must prove that the defendant committed an illegal act after the travel. *See United States v. Griffin*, 699 F.2d 1102, 1106 (11th Cir.1983). But a plain reading of the statute shows that it must prove some conduct after the travel in furtherance of the unlawful activity. Of course, nothing contained herein is intended to suggest that the required overt act cannot be committed in an airport. We need not decide on this record whether proof that Zolicoffer, while still in the airport, was purposefully en route to an appointed site where he was expecting to receive the fruits of his unlawful activity would satisfy the requirement of the Travel Act that there be a separate act after the interstate travel. The government introduced no such proof. We hold that the acts of deplaning and entering the terminal do not, without more, satisfy that essential element of the statute. Because the government failed to prove an act or attempted act subsequent to the travel which was in furtherance of the unlawful activity, Zolicoffer's conviction for the Travel Act offense cannot be upheld.

### IV.

For the reasons stated above, we will affirm all of Zolicoffer's convictions on appeal except that we will reverse his conviction under 18 U.S.C. § 1952.[3]

BECKER, Circuit Judge, concurring.

I join in Parts I and II and footnote 3 of the majority's opinion, and I join in the judgment insofar as it reverses the conviction under the Travel Act. I write separately on the Travel Act conviction, be-

---

**2.** It is an inescapable inference that Zolicoffer deplaned and entered the terminal. There is no evidence that he got any luggage and therefore we do not address the question whether retrieval of such luggage, if any, would have satisfied the statutory element at issue.

**3.** In a pro se supplementary brief that Zolicoffer filed with permission of the court, he contends that the prosecution used its peremptory challenges to exclude blacks from the jury in viola-

tion of the principles enunciated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). This issue was not raised in the district court, and thus we do not have a record basis for review. *See* Government of *Virgin Islands v. Forte*, 806 F.2d 73, 75–76 (3d Cir. 1986); *see also Government of Virgin Islands v. Forte*, 865 F.2d 59 (3d Cir.1989) (reaching issue under 28 U.S.C. § 2255 via Sixth Amendment challenge).

cause I believe that it should be reversed on different grounds.

I agree with the majority that a conviction requires proof of some overt act after the travel. However, I believe that the majority's test for determining whether such an overt act has occurred will prove exceedingly difficult to apply. The majority states that "the government cannot rely on those acts that are inseparable from the interstate travel itself." Maj. Op. at 775. If deplaning, entering the terminal, and getting luggage are inseparably part of the interstate travel, I fail to see at what point the travel ceases and the Travel Act activity may properly be said to begin. I therefore fear, despite the majority's assertion to the contrary, that its holding may immunize activity in airports. In my view the actions of deplaning and entering the terminal and getting luggage may be sufficient for a finding that an overt act in furtherance of a conspiracy had been committed. If they had been proved by the government here, I would hold that they are also sufficient to satisfy the overt act requirement of the Travel Act, assuming the requisite intent to carry out the scheme had also been proved.

Although the majority states that the "government introduced no ... proof ... [that Zolicoffer] was purposefully en route to an appointed site where he was expecting to receive the fruits of his unlawful activity," Maj. Op. at 775, I believe there to be sufficient record evidence indicating that Zolicoffer had the requisite intent upon deplaning. In fact, the majority holds, and I join in that holding, that the telephone calls between Zolicoffer and Oyler were sufficient evidence of facilitation of the conspiracy. Maj. Op. at 773. If they were sufficient evidence of facilitation, I fail to see how they could not be sufficient evidence of Zolicoffer's intent to carry on the acts of the conspiracy. Moreover, as the appellant says in his brief, "[t]he telephone calls from February 1, 1988, through February 11, 1988, all represented attempts by Zolicoffer to get his money owed him or to check up on the money which was for cocaine previously supplied." Appellant's Br. at 28.

Even though the government has provided sufficient evidence of Zolicoffer's intent, I would reverse the district court's judgment of sentence as to the Travel Act, because, as the majority points out, there is no evidence of record that Zolicoffer in fact *did anything* after the plane landed. Maj. Op. at 775. Although the government argues—and I agree—that the acts of deplaning and walking through the airport are sufficient to constitute an overt act for purposes of the Travel Act, the government failed to produce evidence of any act post deplaning. Government counsel conceded this at oral argument. Absent such evidence, we cannot be certain that any act occurred after the plane landed and therefore cannot sustain a conviction under the Travel Act.