UNITED STATES of America,
Plaintiff–Appellee,

v.

Yolanda SANCHEZ DeFUNDORA,
Defendant–Appellant.

No. 88–2682.

United States Court of Appeals,
Tenth Circuit.

Jan. 10, 1990.

William P. Early, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the

brief), Oklahoma City, Okl., for plaintiff-appellee.

Before BALDOCK, McWILLIAMS, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Following a jury trial in the United States District Court for the Western District of Oklahoma, defendant Yolanda Sanchez DeFundora was convicted of eight counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and one count of unlawful travel in aid of racketeering, in violation of the Travel Act, 18 U.S.C. § 1952. On appeal, defendant argues that there was insufficient evidence to support the convictions for distribution of cocaine and the Travel Act conviction. We disagree, and therefore we affirm the judgment of the district court.

### Facts

Defendant was arrested on March 19, 1988, at the Will Rogers Airport in Oklahoma City, Oklahoma, after law enforcement officers found approximately 64 grams of cocaine in defendant's purse. On July 19, 1988, a grand jury returned an indictment charging defendant with the ten counts described above.

One of the government's witnesses at defendant's trial was Sarah Phillip. Phillip testified that she was addicted to cocaine from September 1987 to February 1988. Tr. II at 10. Phillip stated that she purchased cocaine from defendant, for personal use and resale, on eight separate occasions. Those alleged transactions form the basis for the eight counts of distribution of cocaine.

Phillip testified as follows. In late 1987, "[r]ight after Thanksgiving," defendant sold one-half ounce of cocaine to Phillip for $700.00. Tr. II at 14. This was Phillip's first purchase of cocaine from defendant. *Id.* Phillip ingested some of the substance purchased from defendant, and it affected her in the same way that cocaine had affected her in the past. Tr. II at 15.

On or about December 1, 1987, defendant, accompanied by a man named Juan Martinez, sold one ounce of cocaine to Phillip for $1,300. Tr. II at 16. Phillip sampled the cocaine with Martinez and at least one other unnamed individual. Tr. II at 17–18.[1] On or about December 7, 1987, defendant sold one ounce of cocaine to Phillip for $1,100. Tr. II at 20. Approximately one week later, defendant again sold Phillip one ounce of cocaine for $1,100, and Phillip sampled and weighed the substance. Tr. II at 21.

On or about December 21 and 28, 1987, defendant sold one ounce of cocaine to Phillip for $1,100, and on both of those occasions Phillip sampled the cocaine. Tr. II at 22–25. On January 4, 1988, Phillip purchased two ounces of cocaine from defendant for $2,200. Tr. II at 27. Phillip, the defendant, and two other individuals "tested" the substance. Tr. II at 27–28. Approximately one week later, Phillip purchased four ounces of cocaine from defendant for $4,400. Tr. II at 28. The substance was sampled. Tr. II at 29.

Defendant told Phillip that she travelled to Miami, Florida, on a weekly basis to purchase cocaine, and she asked Phillip to go to Miami to purchase cocaine for her. Tr. II at 36–37. Defendant also told Phillip that a man wanted to take over defendant's "cocaine business." Tr. II at 34.

---

1. On cross-examination, Phillip testified that after each purchase, she would sample the alleged cocaine by "tast[ing] it," "clear[ing] it out [i.e., melting it] in a spoon," and then "snort[ing] some of it." Tr. II at 41. Phillip also stated that a man that she knew "chemically evaluated" the first quantity of cocaine purchased from defendant. Tr. II at 41–42.

Defendant argues that Phillip's testimony concerning chemical testing was "not directed at any of the specific occasions charged in counts one through eight of the indictment." Principal Br. of Defendant–Appellant at 20. However, Phillip testified that chemical testing was performed on the substance obtained by Phillip in her "first purchase" from defendant, Tr. II at 42, which was the basis for count one of the indictment.

After Phillip completed her testimony, the government called Darrell Bryson as a witness. Bryson, a ticket salesman for American Airlines, testified that defendant purchased an airplane ticket dated March 10, 1988, for a round trip from Oklahoma City to Miami and then back to Oklahoma City. Tr. II at 56. According to Bryson, defendant paid cash for the ticket and used the name Maria Diaz. Tr. II at 56. Bryson notified law enforcement officers of that transaction. Tr. II at 56–57. Bryson testified that one week later, defendant purchased a similar one-day, round-trip ticket under the name Edilia Rios. Tr. II at 58.

On March 19, 1988, Special Agents of the Drug Enforcement Administration executed a search warrant to search the person and baggage of a particularly described person, using the name Edilia Rios, Maria Diaz, or Kayla Kairadad, who was expected to arrive in Oklahoma City on a flight from Florida via Dallas, Texas. Tr. II at 68. Defendant was the only person arriving on that flight who fit the description in the warrant. Law enforcement officers stopped defendant after she had deplaned and proceeded directly to get into a taxicab. Tr. II at 70. One of those officers, DEA Agent Lawrence Beck, asked defendant for her airplane ticket, and defendant presented Beck with an American Airlines ticket issued in the name of Edilia Rios. Tr. II at 72. Defendant's purse was searched pursuant to the warrant, and approximately 64 grams of cocaine was found. The parties stipulated that if a chemist from the DEA were to testify, he would state that he performed "the normal scientific analysis" on the substance removed from defendant's purse, and that based on his training, experience, and the number of tests that he ran on the substance, he concluded that the substance was 92–percent pure cocaine. Tr. II at 93.

*Discussion*

I. *Distribution of Cocaine*

■ Defendant argues that there was insufficient evidence to convict her of the eight counts of distribution of cocaine because the substances allegedly distributed

by defendant were not subjected to scientific analysis and no evidence was adduced to establish the chemical makeup of those substances. Principal Br. of Defendant–Appellant at 17–18. "Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

■ The government need not introduce scientific evidence to prove the identity of a substance. *See United States v. Baggett*, 890 F.2d 1095 (10th Cir.1989). As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal. *See United States v. Scott*, 725 F.2d 43, 45–46 (4th Cir.1984); *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976); *see also United States v. Meeks*, 857 F.2d 1201, 1204 (8th Cir.1988); *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984), *cert. denied*, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985). The lay testimony and circumstantial evidence relevant to determining the identity of a substance includes:

" 'evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence....' "

*Baggett*, 890 F.2d at 1096 (quoting *Dolan*, 544 F.2d at 1221); *see also United States*

*v. Osgood,* 794 F.2d 1087, 1095 (5th Cir.), *cert. denied,* 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986); *Harrell,* 737 F.2d at 978–79; *Scott,* 725 F.2d at 45–46.

Here, there is direct evidence in the record that the substances allegedly sold by defendant were cocaine. Phillip testified that she, and on some occasions, others, sampled the alleged cocaine and that when she ingested it, it affected her in the same way as cocaine had affected her in the past. Phillip further testified that the first quantity purchased from defendant was chemically tested.

The record also contains indirect evidence tending to corroborate the direct evidence that the substances sold were cocaine. For example, Phillip testified that she was able to resell the substances as cocaine. Phillip also testified that defendant had attempted to have Phillip travel to Miami to purchase some cocaine and that defendant had stated that another individual wanted to take over her cocaine business. In addition, DEA agents seized approximately 64 grams of 92–percent pure cocaine from defendant on March 19, 1988. Although that seizure was not the basis for any of the eight distribution counts, it does lend credence to the conclusion that defendant was dealing in cocaine.

In light of this evidence in the record, we believe that a reasonable jury could conclude beyond a reasonable doubt that the substances allegedly sold by defendant were cocaine. We therefore affirm defendant's convictions for distribution of cocaine.

## II. *Travel Act*

■ Defendant also challenges the sufficiency of the evidence supporting her Travel Act conviction. The Travel Act provides, in part:

Whoever travels in interstate or foreign commerce or uses any facility in inter-

state or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and *thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3),* shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

18 U.S.C. § 1952(a) (emphasis added).

■ The indictment alleges that defendant traveled from Miami to Oklahoma City with the intent to promote or carry on the "unlawful activity" of possession with intent to distribute cocaine and that thereafter defendant did perform and attempted to perform acts to promote, establish and carry on that unlawful activity.[2] In order to prove a Travel Act violation, the government must prove that defendant committed "an overt act after having traveled or after having used the facilities of interstate or foreign commerce." H.R.Rep. No. 966, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2664, 2664; *see also United States v. Zolicoffer,* 869 F.2d 771, 774 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1034 (1989); *United States v. Cauble,* 706 F.2d 1322, 1351 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Tavelman,* 650 F.2d 1133, 1138 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982); *United States v. Stevens,* 612 F.2d 1226, 1231 (10th Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980).[3]

---

**2.** "Unlawful activity" is defined to include "any business enterprise involving ... narcotics or controlled substances." 18 U.S.C. § 1952(b)(1).

**3.** An act need not be unlawful in order to satisfy the overt-act requirement of § 1952(a). *See United States v. Blanco,* 844 F.2d 344, 352 (6th

Cir.) (telephone calls made by defendant held to satisfy the overt-act requirement), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988); *United States v. Stevens,* 612 F.2d at 1231 (same); *see also United States v. Monu,* 782 F.2d 1209, 1211 (4th Cir.1986) (unwrapping

■ Defendant argues that she did not commit an overt act subsequent to her interstate travel. As noted earlier, defendant was stopped immediately after deplaning and stepping into a taxicab. However, the crime that she was alleged to have promoted or carried on by interstate travel was the crime of possession of cocaine with the intent to distribute. Possession of an object is an act, for criminal law purposes, if the possessor knowingly received the object or if he became aware that he possessed it for a sufficient period of time to have been able to terminate his possession. Model Penal Code § 2.01(4) (1985); W. La-Fave & A. Scott, *Criminal Law* § 25, at 182 (1972). The record in this case demonstrates that defendant was aware that she was in possession of cocaine. *See, e.g.,* Tr. II at 140–41. Therefore, defendant's possession of cocaine constituted an overt act, and because she was in possession of cocaine after traveling from Florida to Oklahoma, she committed an act in furtherance of the alleged unlawful activity of possession with intent to distribute cocaine after her interstate travel.

This case is distinguishable from the decision of the Third Circuit in *United States v. Zolicoffer,* 869 F.2d 771 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3172, 104 L.Ed.2d 1034 (1989). In that case, the court held that "the acts of deplaning and entering the terminal do not, without more, satisfy" the overt-act requirement of the Travel Act. *Zolicoffer,* 869 F.2d at 775. The defendant in *Zolicoffer* traveled from Florida to Harrisburg, Pennsylvania, allegedly to collect $37,000 owed to him for a prior sale of cocaine. The defendant was arrested at the Harrisburg International Airport after deplaning and entering the terminal. There was no evidence that the defendant in *Zolicoffer* was in possession of any illegal drugs or drug money at the time he was arrested, nor was there any evidence that he had done anything after deplaning that furthered or tended to further his alleged objective of collecting drug money owed to him. The court observed that deplaning and entering the terminal

are acts that every air traveler must do, and that they were therefore more appropriately considered part of the travel than acts taken "thereafter." *Id.* However, possession of cocaine is not an indispensable part of interstate travel, and, as we have shown previously, knowing possession can be considered an act. It was not alleged or implied that the defendant in *Zolicoffer* had committed an act of possession, and thus that case is not relevant to the issue we decide here.

In sum, we conclude that the evidence was sufficient to support defendant's convictions for distribution of cocaine and the Travel Act conviction. Therefore, we AFFIRM the district court's October 18, 1988 judgment.

packages of heroin received in the mail held to satisfy the overt-act requirement).