**UNITED STATES of America**

v.

**H. William JOHNS.**

**Crim. No. 87–376.**

United States District Court, E.D. Pennsylvania.

Jan. 4, 1991.

---

**4.** See *supra* note 1.

William B. Carr, Jr., Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Claire Rauscher, Defender Ass'n of Philadelphia, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

DITTER, District Judge.

Before me is a post-verdict motion challenging convictions for violations of the Travel Act, 18 U.S.C. § 1952. Based on a detailed stipulation of facts,[1] I found H. William Johns guilty of thirty-eight counts of mail fraud, 18 U.S.C. § 1341, and nine counts of violating the Travel Act. I acquitted him of nine counts of violating the National Stolen Property Act, 18 U.S.C.

1. Johns waived his right to a jury trial.

2. In accordance with Fed.R.Crim.P. 23(c), my June 18, 1990, opinion constituted my findings of fact and conclusions of law in this case.

3. The Travel Act, 18 U.S.C. § 1952, states in pertinent part:

§ 2314. *See United States v. Johns,* 742 F.Supp. 196 (E.D.Pa.1990). Johns does not challenge his mail fraud conviction but contends in his motion for judgment of acquittal that there was insufficient evidence to warrant the Travel Act verdicts. For the reasons that follow, his motion will be denied.

The undisputed facts of this case are set forth in the stipulation of facts, appended to my opinion at 742 F.Supp. 196.[2] They need not be repeated here. Briefly, Johns, a former buyer for Acme Markets, Inc., organized and participated in a lucrative kickback scheme between 1979 and 1985 whereby Acme vendors and brokers paid money to corporations owned and controlled by Johns in exchange for business with Acme. Management at Acme was unaware of Johns' conduct. By using his position at Acme to obtain secret payments from Acme's suppliers, Johns violated Acme's conflict of interest regulations. He intentionally concealed his activities from Acme management and failed to disclose his kickback arrangements in violation of written company policy. The mailings underlying the mail fraud and Travel Act offenses contained the fraudulent kickback checks from which Johns improperly benefitted.

Johns makes two arguments to support his present motion. First, he maintains that the government failed to prove beyond a reasonable doubt that the mail was used to transport the checks at issue across state lines. Second, he contends that even if the checks did travel interstate, the government did not establish that a requisite overt act was committed after that travel was completed. I will address each argument in turn.

*Interstate Mailings*

The Travel Act[3] makes criminal the use of "any facility in interstate commerce,

 (a) Whoever ... uses any facility in interstate ... commerce, including the mail, with intent to—
 (1) distribute the proceeds of any unlawful activity;
 or ...

including the mail," to commit or facilitate the commission of any unlawful activity. The Third Circuit has not addressed the issue of whether or not the mere use of an interstate facility is enough to warrant conviction even though no person or thing actually crossed state lines. While the Second Circuit has held that an intrastate mailing could trigger Travel Act jurisdiction because the United States postal system is a "facility in interstate commerce" under section (a) of the Act regardless of whether the item mailed ever crossed state lines, *United States v. Riccardelli*, 794 F.2d 829 (2d Cir.1986), the Sixth Circuit has disagreed, concluding that the legislative history of the statute does not support such an interpretation, *United States v. Barry*, 888 F.2d 1092 (6th Cir.1989). I need not reach this issue here, however, because I find there was sufficient evidence in the stipulation of facts for me to conclude beyond a reasonable doubt that kickback checks sent by Robert Annick, a broker of janitorial supplies, incorporated as Anko, Inc., to "Pak-all Corporation," and "Alma Trading Corporation," accounts controlled by Johns, travelled interstate.

Anko, Inc., is a Pennsylvania corporation located in Lancaster, Pennsylvania. Both Pak-all and Alma were incorporated in New Jersey and maintained accounts there. According to the stipulation of facts, "Johns arranged for the use of the mail by the brokers and vendors to transmit checks constituting payments from those brokers and vendors to be deposited into Pak-all and Alma bank accounts." Stip. at ¶ 16. In fact, Annick deposited over $290,000 worth of checks into Pak-all and Alma accounts between 1980 and 1985. Stip. at ¶ 14. These checks were "sent and delivered by the United States Postal Service according to the directions thereon." Stip. at ¶ 17. Johns now maintains that "[i]n view of the sparsity of the record concerning the geographic location of the mail depository (or depositories) into which the checks were placed, a conclusion that the

depository (or depositories) was in Pennsylvania is impermissible speculation." Post Verdict Mem. at 4. I disagree.

Johns relies almost exclusively on *United States v. Burks*, 867 F.2d 795 (3d Cir. 1989), a recent Third Circuit decision clarifying the standard of proof required for the government to establish that a mailing occurred in a mail fraud case. "Although circumstantial evidence may be used to prove the elements of mailing essential to convict under § 1341, reliance upon inferences drawn from evidence of standard business practice without specific references to the mailing in question is insufficient." *Id.* at 797. Johns has provided no legal authority to support the application of *Burks*, a case where the use of the mails was in dispute, to the issue before me, where interstate transmission has been challenged. There is no dispute that the Anko checks were carried by United States mail. Assuming, *arguendo*, that the *Burks* standard of proof would apply, I conclude that the government has satisfied its burden with *specific references* in the stipulation of facts from which I inferred that the mailings in question, described in paragraph fourteen of the stipulation, travelled between Pennsylvania and New Jersey.

According to the stipulation of facts, "[a]t all times pertinent to this case, Robert P. Annick was the owner of . . . Anko, Inc., located in Lancaster, Pennsylvania." Stip. at ¶ 4. The checks at issue were transmitted by United States mail to Alma Trading Corporation in Haddonfield, New Jersey, and to Pak-all Corporation in Teaneck, New Jersey." Stip. at ¶ 17. The indictment charges that the checks listed in the Travel Act counts were mailed from Lancaster, Pennsylvania. In its memorandum of law with respect to the stipulated facts, the government argued, "[t]hese [Travel Act] counts are each predicated upon an Anko kickback check sent from Lancaster, Pennsylvania, to either Pak-all Corporation in

---

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in paragraphs (1), . . . and (3), [commits a federal criminal offense].

Teaneck, New Jersey, or Alma Trading Corporation in Haddonfield." Gov't Mem. at 24. Defendant's memorandum addressing the stipulated facts did not allege a failure of proof by the government as to the location of the mail depository, nor did it challenge the government's interpretation of the stipulation of facts. Johns' only argument regarding the Travel Act counts was that the government had failed to prove that his conduct, the specifics of which were not in dispute, amounted to "commercial bribery," the underlying illegal activity charged in the indictment. Curiously, Johns did not dispute any of the facts which the government had alleged or on which it had relied until after I rendered verdicts against him. Certainly, Johns has not waived his right to challenge the sufficiency of the government's proof; however, the fact that Johns made a strategic, pre-trial decision to have his case decided on the basis of a stipulated record, and elected to rely *solely* on legal, as opposed to factual, defenses, is noteworthy.

As factfinder, I may draw any reasonable inferences from the evidence introduced—here, the stipulation of facts—taking into consideration the arguments of counsel. Absent direct evidence that a communication or transmittal occurred interstate, the Third Circuit has sustained a conviction under 18 U.S.C. § 1952 where the jury was permitted to infer interstate activity from other evidence introduced about the communications. *See United States v. Cafero*, 473 F.2d 489, 502 (3d Cir.1973) (although origin of telephone calls not placed into evidence in prosecution for use of interstate facilities in an illegal gambling operation, court permitted govern-

ment to rely on inference that calls originated in Florida and terminated in Pennsylvania based on location of horse races and time factor between end of race and communication of results). Accordingly, I conclude from the parties' stipulation concerning the respective locations of Anko, Pak-all, and Alma, from the stipulation that Johns arranged for the checks to be sent by Annick by mail, and from the stipulation that the checks were delivered by mail to Pak-all and Alma in New Jersey, that the checks listed in counts thirty-nine through forty-seven travelled interstate by mail.[4]

*The Overt Act Requirement*

 To obtain a conviction under the Travel Act, the government must not only establish the use of a facility in interstate commerce with intent to promote, carry on, or facilitate unlawful activity, it must also prove beyond a reasonable doubt that the defendant performed an overt act *after* the interstate transmission was accomplished in furtherance of the unlawful activity. 18 U.S.C. § 1952(a)(3). *United States v. Zelicoffer*, 869 F.2d 771, 774 (3d Cir.), *cert. denied* 490 U.S. 1113, 109 S.Ct. 3172, 104 L.Ed.2d 1034 (1989). This element is known as the "overt act" or "thereafter" requirement.[5] Johns maintains that the evidence is insufficient to show that an overt act occurred *after* the use of the mails. Johns argues that because he owned and controlled Pak-all and Alma, his distribution of Anko kickback checks into these corporate accounts cannot, as I concluded in my June 18 opinion, constitute a "thereafter" act under the statute. "Mailing checks payable to Pak-all and Alma for deposit into the company accounts was, in

---

**4.** I make this finding in what is no doubt an abundance of caution. My purpose is to prevent the necessity of a remand for a specific finding on this matter. *See, e.g., United States v. Livingston*, 459 F.2d 797 (3d Cir.1972). As previously stated, no question was raised by the defendant prior to the verdicts about whether or not the mailings had travelled interstate. Since it was not an issue, I did not discuss the matter in my previous opinion. However, I did conclude, "The government has established beyond a reasonable doubt that Johns arranged each of the *interstate* mailings alleged in counts thirty-nine through forty-seven, commission checks drawn on an Anko account and mailed from

Anko, Inc., in Lancaster, Pennsylvania, to Pak-all in Teaneck, New Jersey (counts thirty-nine through forty-one) and Alma Trading Corporation in Haddonfield, New Jersey (counts forty-two through forty-seven). Stipulation at ¶¶ 14, 16, and 17." 742 F.Supp. at 219. (emphasis added)

**5.** Because Johns was also charged in counts thirty-nine through forty-seven with aiding and abetting, 18 U.S.C. § 2, he is guilty as a principal if these activities were accomplished by others at his direction.

effect, mailing the checks to Johns.... Once the mailing was complete, ... the checks were in Mr. Johns' possession and it is immaterial whether Johns placed them in his pocket or in his bank account." Dft.'s mem. at 9. Johns' argument has no legal basis and requires little, if any, discussion.

Johns attempts to merge the act of interstate transportation of money with the act of distributing or depositing that money. He cites *United States v. Zelicoffer*, 869 F.2d 771 (3d Cir.), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3172, 104 L.Ed.2d 1034 (1989), to support the proposition that the depositing of Anko checks into the Pak-all and Alma bank accounts was an inseparable part of the interstate travel rather than the commission of a distinct overt act. Even the most generous reading of *Zelicoffer* does not lead to this conclusion. In *Zelicoffer*, the defendant, a drug supplier, flew interstate to collect money owed him by a distributor. Upon deplaning, he was arrested at the airport before meeting with the distributor or collecting any money. The court found that no cognizable overt act had occurred following his interstate travel as mandated by 18 U.S.C. § 1952(a)(3):

> [T]he government fails to distinguish between the interstate travel and the act which must be taken thereafter, both of which are essential and separate elements of the offense. Every traveler arriving at the airport must deplane and enter the terminal; thus, such actions are more appropriately considered part of the travel than acts taken "thereafter."

869 F.2d at 775.

While the acts of transmitting and receiving a check by interstate mail may appropriately be considered an integral part of the travel, the act of depositing that check or distributing its proceeds involves more and so may not. Before a check can be deposited, it must be endorsed, a deposit slip must be filled out, and the check must be taken to the place of deposit. If the proceeds of a check are to be obtained immediately, it still must be endorsed and presented for cashing. Here, the checks in

question were in fact deposited into the Pak-all and Alma checking accounts. Stip. at ¶ 14. There has been no suggestion that in this case the defendant, or someone designated by him, did not follow the customary steps to make these deposits. The Travel Act anticipates that an overt act might be the distribution of the proceeds of unlawful activity. 18 U.S.C. § 1952(a)(1); *see United States v. Arruda*, 715 F.2d 671, 682 (1st Cir.1983) ("[M]ere acceptance of the [bribe] money was a sufficient overt act following the travel; acceptance is an act taken in furtherance of the distribution of the proceeds of an unlawful bribery scheme."); *United States v. Cole*, 704 F.2d 554, 558 (11th Cir.1983). It strains logic to assume that Congress would have intended to shield individuals such as Johns from prosecution under the Act simply because they happened to own or control the accounts into which unlawful proceeds they received were deposited.

I conclude that Johns' receipt of the Anko checks and his subsequent depositing of those checks into Pak-all and Alma accounts were distinct acts, the former concluding the interstate transportation element of the Travel Act, and the latter constituting the "thereafter" or "overt act" requirement of the Act.

*Conclusion*

On the basis of the parties' stipulation of facts and their respective memoranda of law, I conclude that the government proved beyond a reasonable doubt that the Anko checks described in counts thirty-nine through forty-seven were mailed interstate and that Johns committed an overt act in furtherance of his unlawful activity when he deposited or arranged to be deposited those checks into Pak-all and Alma bank accounts. His motion for judgment of acquittal of his conviction under the Travel Act must therefore be refused.