21 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Deshauna BARFIELD, Defendant-Appellant.
 No. 93-5434.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 29, 1994.
Decided April 15, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, District Judge. (CR-92-28-17)
 W. James Payne, Powell & Payne, Shallotte, NC, for appellant.
 J. Douglas McCullough, U.S. Atty., David P. Folmar, Jr., Asst. U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Deshauna Barfield was convicted of using a communication facility (Western Union) to promote and facilitate an unlawful activity, 18 U.S.C.A. Sec. 1952 (West Supp.1993) (the Travel Act), 18 U.S.C.A. Sec. 2 (West 1969). She appeals on the ground that the evidence was insufficient to support her conviction. She also appeals her sentence, alleging that the district court erred in determining her criminal history category and her base offense level. We affirm.
 
 
 2
 During the fall of 1991, Barfield lived with Janice Webb in an apartment in Wilmington, North Carolina, which was used by David Mann and people working for him in a large-scale crack conspiracy. Mann's wife, Janene Crosland, stayed in New York and paid girls to bring crack to North Carolina by bus on a regular basis. His street sellers lived in another apartment, but often were supplied with crack to sell from Webb's apartment and returned the profits there, giving the money either to Mann or to Webb. A few times, Webb and Barfield drove some of the street sellers to the housing projects where they sold crack.
 
 
 3
 Using Western Union, Mann wired his profits to his wife, to lessen the risk of having too much money in hand. Mann asked various people to wire the money for him, including Barfield, who did it on October 15, 1991, and November 7, 1991. Both times, Barfield gave a false address as her home address on the Western Union form; she used 2121 Dexter Street, which was an apartment Mann had once rented as a residence for his street sellers. When later interviewed by federal agents, Barfield stated that she knew the money she wired came from sales of crack cocaine.
 
 
 4
 In Count Twenty-three of a multi-count indictment, Barfield was charged with use of a communication facility to promote and facilitate an unlawful activity in violation of the Travel Act, specifically, a business enterprise involving narcotics and controlled substances.
 
 
 5
 The Travel Act, 18 U.S.C.A. Sec. 1952, provides:
 
 
 6
 (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to--
 
 
 7
 (1) distribute the proceeds of any unlawful activity; or
 
 
 8
 (2) commit any crime of violence to further any unlawful activity; or
 
 
 9
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
 
 
 10
 and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 
 
 11
 (b) As used in this section (i) "unlawful activity" means
 
 
 12
 (1) any business enterprise involving ... narcotics or controlled substances....
 
 
 13
 Mann testified at Barfield's trial that he gave money to Barfield and Webb whenever they asked for it because they knew about his crack operation. Barfield moved to her mother's house in late 1991, and had a baby. Mann testified that, just before his arrest in January 1992, he had agreed to rent an apartment for Barfield which would have been an alternate place for him to stay and keep his drugs.
 
 
 14
 Other conspirators testified at Barfield's trial, and their testimony corroborated Mann's. Barfield's motion for acquittal at the close of the government's case was denied, and Barfield was convicted.
 
 
 15
 Barfield attacks the sufficiency of the evidence on two grounds. First, she claims that the government failed to prove that she intended to promote an unlawful activity when she wired money for Mann because Mann told her the money was to pay his family's bills. A jury's verdict must be sustained if, taken in the light most favorable to the government, there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). In this case, there was ample evidence from which the jury could conclude that Barfield knew that she was promoting Mann's drug operation when she wired money to New York for him. Mann testified that the story about sending money to his family for expenses was a front, and an obvious one because he was taking in so much money. He testified that Barfield was knowledgeable about his drug business, and that the regular transmission of his profits to his wife was very helpful to his business because it allowed him to maintain a constant supply of crack.
 
 
 16
 Barfield also argues that the government failed to show that, after she wired the money, she performed an act which assisted Mann, in order to satisfy the "thereafter" clause ofSec. 1952(a). However, the performance of any of the acts specified in subparagraphs (1), (2), or (3) of Sec. 1952(a) satisfies the overt act requirement. United States v. Admon, 940 F.2d 1121, 1125 (8th Cir.1991). The distribution of the funds by Western Union, acting as Barfield's agent, to Mann's wife in New York supplied the necessary act. See United States v. Cole, 704 F.2d 554, 558-59 (11th Cir.1983). The evidence was thus sufficient for the jury to convict Barfield.
 
 
 17
 Barfield contends that the district court erred in awarding her one criminal history point under guideline section 4A1.1(c)* for each of two prior probationary sentences. We need not reach this issue because the deletion of these criminal history points would not affect Barfield's sentence. The statutory maximum for a violation of Sec. 1952 is sixty months, which is less than the guideline range would be even if Barfield had no criminal history points. In this situation, the statutory maximum became Barfield's guideline range. U.S.S.G. Sec. 5G1.1(a). The issue she raises is therefore moot.
 
 
 18
 Finally, Barfield challenges the computation of her base offense level under guideline section 2E1.2(a)(1), which directs the sentencing court to use a base offense level of six or the base offense level for the underlying offense, whichever is greater. The district court adopted the probation officer's recommended base offense level of thirty-two, premised on Barfield's distribution of $4700, which was derived from sales of 94 grams of crack. U.S.S.G. Sec. 2D1.1(c)(6).
 
 
 19
 Barfield first maintains that this calculation violated her due process rights because the charge in the indictment gave her no notice of what the underlying offense was, and therefore invited the district court to select an underlying offense arbitrarily. Because the indictment specified that the unlawful activity was a business enterprise involving narcotics, and Count One described Mann's conspiracy in detail, it was abundantly clear even before her trial, and certainly by the time of sentencing, that the underlying offense was a crack conspiracy. Barfield's sentence calculation was not arbitrary.
 
 
 20
 Barfield also claims that it was legally impossible for her to have promoted the conspiracy by wiring money for Mann, because the offense of conspiracy was completed when the initial agreement was made between the conspirators. This argument fails because a conspiracy is a continuing offense, not complete until it is terminated or the conspirators withdraw. United States v. Stanberry, 963 F.2d 1323, 1324 (10th Cir.1992); see also United States v. Edgecomb, 910 F.2d 1309, 1310 (6th Cir.1990) (conspiracy not completed at conclusion of agreement); United States v. Meitinger, 901 F.2d 27, 28 (4th Cir.) (continuing offense), cert. denied, 498 U.S. 985 (1990). Mann's conspiracy continued until his arrest in January 1992. Barfield's acts thus occurred while the conspiracy was ongoing.
 
 
 21
 We therefore affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1992)