**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas MURRAY, Defendant-Appellant.**

**No. 83–2541.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1984.

Decided Jan. 29, 1985.

George C. Howard, Chicago, Ill., for plaintiff-appellee.

Patrick J. Chesley, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and CAMPBELL, Senior District Judge.*

COFFEY, Circuit Judge.

On May 18, 1983, after a jury trial in the United States District Court for the Central Division of Illinois, the defendant, Thomas Murray, was convicted of two counts of possession of marijuana with the intent to distribute, and one count of conspiracy to possess marijuana with the intent to distribute. The defendant appeals arguing that the evidence in support of his convictions was insufficient. We affirm.

On September 1, 1981, law enforcement officials raided a marijuana distribution organization operating in Springfield, Illinois. According to the evidence produced at Murray's trial, the distribution ring purchased large quantities of marijuana and sold smaller amounts to persons who, in turn, either sold to final consumers or sold to

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

other dealers in quantity sales. Murray was indicted on two counts of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to possess marijuana with the intent to distribute in violation of 21 U.S.C. § 846. James McGowan and Daniel Richardson, who were arrested as a result of the raid, entered into plea agreements with the government. At trial, Daniel Richardson testified that he had been the bookkeeper for the drug ring and had recorded the distribution ring's activities in a ledger. He stated that the ledger, which was subsequently introduced at trial, contained undated entries representing McGowan's marijuana purchases. The ledger entries referred to the bale numbers of the marijuana and also reflected the amount of money McGowan owed the organization for past drug sales. Richardson further testified that he knew that the substance he sold to McGowan was marijuana because he had smoked marijuana "on and off maybe five years" and that the substance "looked like marijuana" and "smelled like marijuana."

McGowan testified that he helped transport 3,000 pounds of marijuana to Springfield, Illinois on May 30, 1981. He estimated that he obtained marijuana from the Springfield organization weekly during the months of June, July and August of 1981. McGowan said that he sold approximately 20 pounds of marijuana to the defendant, Murray, his co-worker at the Norfolk and Western Railroad. Specifically, McGowan testified that he delivered 10 pounds of marijuana to Murray's residence during the fourth week of June in 1981, and another 10 pounds during the third week of July. McGowan, who testified that he had smoked marijuana for approximately ten years and that the substance he sold to Murray "looked like marijuana, [and] smoked like marijuana," stated that he charged Murray $275 a pound for the marijuana. McGowan further informed the court that, from his knowledge and experience with marijuana, it would take one person approximately one year to smoke ten pounds of marijuana. Also, according to McGowan, his meetings with Murray were arranged so that no one else would be present when he delivered the marijuana to Murray. During McGowan's testimony, the government introduced McGowan's telephone records reflecting eight phone calls made to Murray's residence during a span of seventeen days in August of 1981, of which three calls were made in one day. With the exception of two phone calls made in February and March of 1981, all of McGowan's calls to Murray's residence were made during the period of time in which the drug transactions allegedly took place.

Murray testified that McGowan had in fact approached him several times during the summer of 1981 regarding the purchase of marijuana. However, Murray denied agreeing to purchase or receive marijuana from McGowan. Murray further stated he borrowed $1,500 from McGowan in early August. According to Murray, the loan was interest-free and could be paid back at any time. Murray, who said that he used the money to build a deck on his house, claimed that McGowan unexpectedly demanded repayment of the loan during the first week of September. Murray stated he was forced to borrow $1,500 from a bank in Decatur, Illinois on a six-month note, in order to pay McGowan. Murray testified he paid McGowan the $1,500 at the Norfolk and Western Railroad depot. On cross-examination, McGowan was asked whether he had loaned Murray $1,500 in August. McGowan denied lending money to Murray and stated that in August Murray paid him for the marijuana he had received during the third week of July.

The defense also called Kay Ziemer, Murray's housemate who said that McGowan had visited the house once while she was present but that she had no knowledge of the subject matter of the conversations between Murray and McGowan. Ziemer, who claimed that she had never observed marijuana in Murray's house, also testified that she saw Murray give McGowan a large sum of money in cash at the Norfolk and Western depot during September of 1981.

Although she heard their conversation, she was unable to recall the substance of the conversation between Murray and McGowan at the time the money was exchanged.

■ On May 18, 1983, the jury found Murray guilty on all three counts. From these convictions the defendant appeals, arguing that the evidence produced at trial was insufficient to support the conviction. A jury verdict must be sustained if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ The defendant argues initially that, since the alleged marijuana was neither chemically analyzed nor produced in court, the evidence failed to establish that the substance allegedly sold to Murray was in fact marijuana. The identity of a drug may be established by circumstantial evidence. *United States v. Roman,* 728 F.2d 846, 859 (7th Cir.1984), *cert. denied,* — U.S. ——, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984). In *Roman,* two co-conspirators testified that the substance was L.S.D., a drug they both had "substantial experience with over an extended period of time." *Id.* A high price for the substance purchased and the covert nature of the transaction also may provide support that the substance was a drug. *Id.* In the present case, both Richardson and McGowan testified that they had smoked marijuana for five to ten years, and that the substance they were selling looked, smelled, and smoked like marijuana. Furthermore, McGowan asserted that, since he was selling marijuana, he charged Murray $275 a pound for the substance. Moreover, the ledger entries demonstrated that McGowan had marijuana to sell because he had signed out for a large amount of marijuana. The record of McGowan's telephone calls indicated that he had called Murray during the time period in which the drug transactions took place. In addition, McGowan stated that he arranged to be alone with Murray each time he delivered the marijuana. Finally, Murray paid McGowan a large sum of money in cash in early September of 1981. The direct testimony of Richardson and McGowan, combined with the circumstantial evidence surrounding the transactions, provides substantial support for the jury's verdict that the substance involved was in fact marijuana. Based on the totality of the circumstances and the evidence adduced, and in particular the identification of the substance as marijuana by Richardson and McGowan, the high price charged for the marijuana and the covert nature of the purchases, we hold that the evidence was more than sufficient to support a finding that the substance purchased by Murray was marijuana.

■ The defendant next argues that the convictions should be overturned because the only evidence establishing that Murray purchased or possessed marijuana was McGowan's testimony, which, he contends, was at best inconsistent and confusing. Specifically, Murray claims that Richardson's ledger book shows that McGowan initially purchased marijuana from the distribution ring in late August of 1981, two months after the alleged sale to Murray. Moreover, Murray argues that while McGowan testified that he purchased marijuana from Richardson, Richardson stated that he was not present when McGowan purchased marijuana from the distribution ring. Further, Murray points to the two phone calls in February and March to demonstrate the unreliability of McGowan's testimony that he only called Murray to discuss drug transactions. Finally, Murray argues that both his testimony and Kay Ziemer's contradict McGowan. According to Murray, their testimony establishes both that he did not keep marijuana at his residence and that the large sum of money he gave McGowan in early September was to repay a loan. Murray's argument that McGowan first purchased marijuana in late August of 1981 is not supported by the ledger book because the entries are not

dated. Similarly, Murray's allegation of a conflict between the testimony of McGowan and Richardson finds no support in the record. In response to the question, "Do you know of any specific instances when Mr. McGowan purchased any marijuana at any time earlier than August, late August, 1981?" Richardson stated, "I was not present or personally I did not oversee any transactions between Mr. McGowan." McGowan testified that he was present when Richardson recorded his transactions in the ledger book. According to McGowan, Richardson did not make the ledger book entries contemporaneously with the purchases of the marijuana; rather, Richardson totaled up his purchases at a later date and made the entries at that time. Taking into consideration that McGowan did not testify that Richardson was present on each and every occasion that he purchased marijuana, his testimony is not in conflict with that of Richardson. Finally, when confronted with the record of the February and March phone calls, McGowan stated that they "must have been for some other purpose." Whether the existence of the February and March calls impeached McGowan's testimony that the eight calls in August concerned marijuana transactions was a jury question. Likewise, the conflicts between McGowan's testimony and the testimony of Murray and Ziemer, presented questions of credibility for the jury to resolve. "It is well settled law that a court of appeals does not stand in judgment of the credibility of witnesses. Rather, that question is left to the sound discretion of the trier of fact." *Roman*, 728 F.2d at 856. To arrive at its verdict, the jury obviously must have found McGowan to be a credible witness and believed his testimony rather than the testimony of Murray and Ziemer. We hold that, because McGowan's testimony was neither inconsistent nor confusing, the jury's verdict that Murray purchased the marijuana is amply supported by the evidence.

Finally, the defendant argues that his conspiracy conviction should be overturned because the evidence at best sets forth only two isolated purchases of mari-

juana thus merely establishing a buyer-seller relationship. Murray concludes that the existence of a buyer-seller relationship is insufficient to support a conviction for conspiracy to distribute marijuana, "[b]ecause the crime of conspiracy requires a concert of action among two or more persons for a common purpose, [t]he mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." *United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir. 1978). Quantity alone may be sufficient for a jury to infer the intent to further distribute the marijuana. *See, Roman*, 728 F.2d at 858; *United States v. Fleming*, 677 F.2d 602, 609 (7th Cir.1982). Ten pounds of marijuana has been held to be "an ample distributable amount." *United States v. Schmidt*, 662 F.2d 498, 505 (8th Cir.1981). Murray purchased 10 pounds of marijuana on two separate occasions in less than one month. At trial, McGowan, one experienced in the use and sale of marijuana, testified that it would take a year for one person to smoke ten pounds of marijuana. In view of the large quantity of marijuana involved—two purchases of ten pounds of marijuana—and the timing of the purchases—less than one month apart—it is clear that a reasonable jury could have found Murray was not a mere purchaser for individual consumption from the drug ring, but that he was an active participant in the overall conspiracy to distribute a larger supply of marijuana.

The convictions and the judgment of the district court are AFFIRMED.