(825 P.2d 174)

No. 65,911

STATE OF KANSAS, *Appellee,* v. CLAYTON NORTHRUP, *Appellant.*

Opinion filed January 24, 1992.

*Kaye Messer,* assistant appellate defender, *Tamera S. Hicks,* legal intern, of Washburn Law Clinic, *Lisa Nathanson,* supervising attorney, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Dee W. James*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before LEWIS, P.J., BRAZIL, J., and BILL D. ROBINSON, JR., District Judge, assigned.

LEWIS, J.: Clayton Northrup, defendant, appeals from his convictions by a jury of one count of the sale of methamphetamine and one count of the sale of marijuana.

The convictions were primarily based on evidence from two controlled purchases of illegal drugs from the defendant. The police had utilized the services of Leslie Bowley, who had agreed to work undercover for the authorities. Bowley made one buy of methamphetamine and one buy of marijuana from the defendant on separate occasions.

The defendant argues that his convictions should be reversed because the trial court erred in admitting into evidence a statement he made to the police officers. The defendant also argues that the evidence was insufficient to prove that the substance he sold to Bowley was marijuana. We affirm the defendant's convictions.

Bowley had run afoul of the law himself and was charged with several drug-related violations. The authorities offered him a chance to dispose of these charges by working undercover and making drug buys for the police. Bowley accepted this proposition and was assigned to work with Detective Brad Homman of the Dickinson County Sheriff's Department.

On October 14, 1989, Bowley approached the defendant, seeking to purchase "crank," or methamphetamine. The defendant produced a quantity of the substance, which Bowley purchased with money provided by the authorities. After the purchase, Bowley turned over the substance to Detective Homman. Detective Homman performed a field test on the substance, concluded it was a controlled substance, and sent it to the KBI laboratories for further examination and identification.

On November 10, 1989, a warrant was issued for the arrest of the defendant. The warrant was issued pursuant to a complaint, charging the defendant with the sale of methamphetamine on October 14, 1989, as well as with other crimes. Contempora-

neously, a search warrant authorizing the search of the defendant's home was obtained.

On November 11, 1989, Bowley made a second controlled purchase from the defendant. On this occasion, he purchased a substance alleged to be marijuana for the price of $120 per ounce. The facts of the purchase will be further developed.

After the purchase was made on November 11, 1989, the authorities arrested the defendant and searched his home under the authority of the search warrant issued. Subsequent to his arrest, the defendant made several unprompted statements. These statements included comments to the effect that many times a five-dollar bill from a drug purchase had provided food for his family. He also expanded upon his belief that drugs should be legalized and that drugs were no worse than alcohol. These statements were admitted at trial during cross-examination of the defendant and during the State's rebuttal evidence.

Prior to the trial, the court granted the defendant's motion to suppress the evidence seized from his residence. The court concluded that the affidavit used to obtain the search warrant was insufficient and that the search was illegal. The State does not appeal from that ruling.

## THE STATEMENTS

The defendant contends that his convictions should be reversed because of error by the trial court in admitting into evidence the spontaneous statements referred to earlier in this opinion.

The defendant's argument evolves from the order of the trial court suppressing illegally seized evidence. The defendant argues that his statements were the indirect products of the unconstitutional search. According to *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182 (1920), the exclusionary rule extends to the indirect as well as the direct products of an unlawful search. Furthermore, policies underlying the exclusionary rule invite no logical distinction between physical or verbal evidence. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Underlying the defendant's argument is his insistence that the State lacked probable cause to arrest him without the suppressed evidence. In addition, he argues that not enough time elapsed

between the illegal search and his statements to dissipate the taint of illegality. As a result, the defendant submits that his statements were "fruits of the poisonous tree" and, therefore, inadmissible.

The State counters by pointing out that the statements were made as a result of a legal arrest, which had nothing to do with the illegal search and seizure. This position is fortified by the fact that the police officers went to the defendant's home not only with a search warrant, but also an arrest warrant, which authorized the arrest of the defendant for his sale of methamphetamine to Bowley on October 14, 1989. The defendant's arrest on an arrest warrant issued prior to the illegal search indicates that the defendant's statements were not the "fruits" of the illegal search.

"Assuming the illegality of the search, the question narrows to one of determining whether defendant's statements were brought about by that illegality rather than by means sufficiently distinguishable to be purged of the primary taint. Under *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, the fruits of the poisonous tree doctrine, when applicable, not only bars derivative physical evidence, but also derivative testimonial evidence, . . . The [fruits of the poisonous tree] doctrine is inapplicable, however, where the state learns of the evidence from an independent source or where the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." *State v. Childers*, 222 Kan. 32, 40, 563 P.2d 999 (1977).

We hold that the position taken by the State is meritorious. The evidence shows that, on October 14, 1989, Bowley purchased a controlled substance from the defendant. This sale by the defendant was a violation of the law and subjected him to arrest. On November 10, 1989, a warrant was issued for the defendant's arrest based, at least partially, on the first sale to Bowley. There is no challenge by the defendant to the validity of the arrest warrant. It follows that the defendant's arrest on a warrant for an illegal drug sale, which occurred prior to the search, was not and could not have been based on evidence illegally seized from the defendant's premises. The statements made by the defendant while in custody under the arrest warrant could not be considered "fruits" of an illegal search. The defendant's argument that the statements were inadmissible is without merit.

The defendant's argument fails on another ground as well. The offending statements were not offered by the State as part of its case in chief. The statements were offered first during the cross-examination of the defendant in an effort to impeach his direct testimony. The defense to the charges was that the defendant had worked undercover with Detective Homman in the past. He attempted to explain the drug sales by suggesting they were done in an effort to gain the confidence of the drug community and to improve on his undercover skills. The defendant testified that he advised the arresting officers of his motivation as he was being escorted from his house to the jail. However, when asked what else he may have said to the police officers, the defendant would only state that all other comments were "mumbled or garbled."

In an effort to impeach this testimony, the defendant was asked if he made statements to the police concerning drug money, putting food on the table, and his belief that drugs should be legalized. These questions were asked in an effort to show that all of his statements were not "mumbled or garbled." The State argues that it made use of the complained-of statements only to discredit prior testimony of the defendant.

As a general rule, evidence obtained by an illegal search and seizure is not admissible against the accused. This rule, however, does not extend to a situation where the evidence is used to discredit the defendant's voluntary testimony. *Walder v. United States*, 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (1954). Use of illegally obtained evidence to impeach statements made by the defendant during cross-examination is also permitted. *United States v. Havens*, 446 U.S. 620, 64 L. Ed. 2d 559, 100 S. Ct. 1912 (1980). We hold that the complained-of statements were properly admitted during the cross-examination of the defendant to impeach his direct testimony. The prior out-of-court statements by the defendant certainly tended to impeach his direct testimony and his insistence that most of what he said was "mumbled or garbled." The same rationale supports the use of the statements as rebuttal evidence by the State.

The trial court did not err in admitting the statements under the circumstances shown.

## SUFFICIENCY OF THE EVIDENCE

This argument relates only to the conviction for possession and

sale of marijuana. There was no exhibit admitted into evidence containing what was identified as marijuana. In addition, no expert testimony or laboratory analysis was admitted to identify the substance as marijuana. Although the State attempted to introduce such evidence, its admission was denied by the trial court. The defendant argues that, under the circumstances, the evidence was insufficient to prove that the substance he sold to Bowley was marijuana.

This is a case of first impression in this State. There are no Kansas decisions holding that circumstantial evidence is sufficient to prove the identity of a substance as marijuana or another controlled substance. We believe that, despite the lack of expert laboratory analysis to prove the identity of the substance, this identity may be proven by circumstantial evidence. The courts of our four sister states bordering us have all sustained this general proposition. *People v. Steiner*, 640 P.2d 250 (Colo. App. 1981); *State v. Kerfoot*, 675 S.W.2d 658 (Mo. App. 1984); *State v. Nash*, 233 Neb. 318, 444 N.W.2d 914 (1989); *State v. Watson*, 231 Neb. 507, 437 N.W.2d 142 (1989); *Swain v. State*, 805 P.2d 684 (Okla. Crim. 1991).

In addition to these adjoining states, the federal courts in at least 6 circuits and 19 other states have concluded that the proof of marijuana or another controlled substance may be sustained by circumstantial evidence. *United States v. Sanchez DeFundora*, 893 F.2d 1173 (10th Cir. 1990); *U.S. v. Baggett*, 890 F.2d 1095 (10th Cir. 1989); *U.S. v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *United States v. Eakes*, 783 F.2d 499 (5th Cir. 1986); *United States v. Murray*, 753 F.2d 612 (7th Cir. 1985); *United States v. Harrell*, 737 F.2d 971 (11th Cir. 1984); *United States v. Scott*, 725 F.2d 43 (4th Cir. 1984); *United States v. Dolan*, 544 F.2d 1219 (4th Cir. 1976); *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974), *cert. denied* 420 U.S. 1004 (1975); Alabama: *Jenkins v. State*, 46 Ala. App. 719, 248 So. 2d 758 (1971); *Johnson v. State*, 501 So. 2d 568 (Ala. Crim. App. 1986); Alaska: *Winters v. State*, 646 P.2d 867 (Alaska App. 1982); Arizona: *State v. Cunningham*, 17 Ariz. App. 314, 497 P.2d 821 (1972); California: *People v. Garcia*, 166 Cal. App. 3d 1056, 212 Cal. Rptr. 822 (1985); Connecticut: *State v. Cosgrove*, 181 Conn. 562, 436 A.2d 33 (1980); Florida: *Pama v. State*, 552 So. 2d 309 (Fla. Dist.

App. 1989); *A.A. v. State*, 461 So. 2d 165 (Fla. Dist. App. 1984); Hawaii: *State v. Schofill*, 63 Hawaii 77, 621 P.2d 364 (1980); Illinois: *People v. Ortiz*, 197 Ill. App. 3d 250, 554 N.E.2d 416 (1990); *People v. Eichelberger*, 189 Ill. App. 3d 1020, 546 N.E.2d 274 (1989); Indiana: *Warthan v. State*, 440 N.E.2d 657 (Ind. 1982); *Copeland v. State*, 430 N.E.2d 393 (Ind. App. 1982); Kentucky: *Edwards v. Commonwealth*, 489 S.W.2d 23 (Ky. 1972); Michigan: *People v. Boyd*, 65 Mich. App. 11, 236 N.W.2d 744 (1975); Montana: *State v. Starr*, 204 Mont. 210, 664 P.2d 893 (1983); New Jersey: *State v. Pipkin*, 101 N.J. Super. 598, 245 A.2d 72 (1968), *cert. denied* 393 U.S. 1042 (1969); New Mexico: *State v. Rubio*, 110 N.M. 605, 798 P.2d 206 (1990); New York: *People v. Jewsbury*, 115 App. Div. 2d 341, 496 N.Y.S.2d 164 (1985); *People v. Kenny*, 30 N.Y.2d 154, 331 N.Y.S. 2d 392, 282 N.E.2d 295 (1972); Pennsylvania: *Commonwealth v. Leskovic*, 227 Pa. Super. 565, 307 A.2d 357 (1973); Texas: *Miller v. State*, 168 Tex. Crim. 570, 330 S.W.2d 466 (1959); Washington: *State v. Hutton*, 7 Wash. App. 726, 502 P.2d 1037 (1972); West Virginia: *State v. Frazier*, 162 W. Va. 602, 252 S.E.2d 39 (1979).

It is apparent that a scientific chemical analysis of a substance will provide the most reliable evidence as to the identity of that substance. Despite that fact, we are not convinced that it is only the evidence of identity that will sustain a criminal conviction. We are, therefore, in agreement with the holdings set forth in the cases cited above. We hold that proof of the identity of a substance by circumstantial evidence may be sufficient in a drug prosecution where no chemical tests are admitted or available. Our holding, of course, does not dispense with the requirement that the circumstantial evidence presented must prove the identity of the substance beyond a reasonable doubt.

The next step in our analysis is to determine whether the evidence in the instant matter was sufficient to prove beyond a reasonable doubt that the substance the defendant sold to Bowley was marijuana.

First, in passing on the sufficiency of the evidence to sustain a criminal conviction, we decide not whether the evidence would have persuaded us to return a guilty verdict, but whether, viewing the record in the light most favorable to the government, there was substantial evidence from which the jurors could have

concluded without a reasonable doubt that the defendant committed the offense charged. *United States v. Meeks*, 857 F.2d at 1203-04; *United States v. Dolan*, 544 F.2d at 1221.

"A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Smith*, 245 Kan. 381, 393, 781 P.2d 666 (1989). When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of *all the evidence*, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Smith*, 245 Kan. at 392." (Emphasis added.) *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

See *State v. Gibson*, 246 Kan. 298, 303, 787 P.2d 1176 (1990); *State v. Damewood*, 245 Kan. 676, 687, 783 P.2d 1249 (1989).

"It is a jury's prerogative to determine the weight to be given to the evidence, the reasonable inferences to be drawn from the evidence, and the credibility of the witnesses. It is not the function of an appellate court to determine the credibility of witnesses even if there is evidence which could have caused the jury not to believe the witness." *State v. Gibson*, 246 Kan. 298, Syl. ¶ 3.

"It is the jury's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses. *State v. Pink*, 236 Kan. at 729; *State v. Holt*, 221 Kan. 696, 561 P.2d 435 (1977). An appellate court will not substitute its evaluation of the evidence for that of the jury." *State v. Holley*, 238 Kan. 501, 511, 712 P.2d 1214 (1986).

See *State v. Green*, 245 Kan. 398, 403, 781 P.2d 678 (1989).

We have reviewed the record in this matter in accordance with the standards of review cited above. Based on that review, we hold that the evidence was sufficient to convince a rational jury of a defendant's guilt of possession and sale of marijuana beyond a reasonable doubt.

We respect the integrity of the jury system, and any other conclusion would not be in harmony with that respect.

The evidence in this case shows that Bowley approached the defendant on November 11, 1989, and asked to purchase some marijuana. The defendant responded by telling Bowley that he could get him some and told him to come back in a half hour or 45 minutes. Bowley asked the defendant how much it would cost per ounce, and the defendant advised him that the cost for an ounce of the substance would be $120. When Bowley returned, he went to a garage where he met the defendant. He testified:

"A. Right. Clayton, whatever his name is, came through, and I could see a big bulge under his shirt, you know, when he came, and he called me in his garage. He got out a bag of marijuana. He said he watched the guy weigh it, it weighs over an ounce and it's real good. There was more if I wanted it. I gave him a hundred twenty dollars, I put the ounce under my shirt, walked out to the car, got in the car, set it on the seat beside me and drove out of town and gave it to Brad, at our meeting place.

"Q. How did you know what the cost of the marijuana was going to be?

"A. Clayton had told me."

The evidence indicated that Bowley was an individual who was involved in the drug trade. He had been arrested and charged with several counts of illegal drug transactions, which had led to his agreement to work undercover. The defendant testified that, when he had worked undercover, he had made several drug buys from Bowley.

Detective Homman testified that, during the time Bowley was purchasing the marijuana, he was wearing a "wire." Detective Homman overheard the conversation between Bowley and the defendant and verified Bowley's testimony concerning that conversation. Detective Homman also testified that he was a member of the drug enforcement task force of Dickinson County and that he had special training in drug law enforcement and education. He indicated that part of the procedure in this type of case was to conduct a field test on the drug purchased. These tests help to determine if the substance purchased is the illegal drug suspected and whether to send it to the KBI for analysis. Detective Homman conducted a field test on the substance purchased by Bowley from the defendant and, as a result, sent it on to the KBI for further testing. Detective Homman testified that the substance purchased by Bowley from the defendant was "a plastic bag containing a green vegetation." He indicated that the substance "looked like marijuana to me."

Finally, the defendant took the stand on his own behalf. The defendant confirmed that Bowley approached him seeking to buy drugs and that, "I told him that I knew where there was some marijuana." The defendant then told Bowley to leave and come back in a few minutes. He testified as follows:

"Q. All right. What did you do after Mr. Bowley left?

"A. *I proceeded to get him an ounce of marijuana.*"

The defendant was also asked, "You got some marijuana some-where?" and he replied, "Oh, the—yes, the ounce." The defendant also testified that Bowley asked for marijuana, that he told Bowley that he would sell him marijuana, and that he would not "to my knowledge" get him something that was not marijuana. As to the defendant's knowledge about marijuana, the defendant testified:

"Q. What did you know?
"A. I knew what marijuana was.
"Q. How did you know that?
"A. Previously, in school and stuff, I'd seen it used. Have to be blind not to, in this day and age."

We consider the evidence outlined above to be sufficient to convince the jury, beyond a reasonable doubt, that the defendant sold marijuana to Bowley. The record does not contain even the slightest suggestion that what the defendant sold Bowley was anything other than marijuana. The defendant admitted by his own testimony that he obtained and sold marijuana to Bowley and even insisted that he would not give Bowley anything that was not marijuana. There was strong and considerable evidence to indicate the substance was marijuana, and there was absolutely no evidence to suggest it could have been anything else. Under these circumstances, a rational jury could certainly have concluded that the substance was marijuna beyond a reasonable doubt.

We have analyzed the federal and state decisions in point, which are cited in this opinion. As might be expected, the factual patterns shown are diverse. In some cases, the evidence might have been stronger than we have in this matter; in others, not as impressive. These decisions teach us only that circumstantial evidence, in whatever form it comes, can be sufficient for a conviction.

*United States v. Dolan*, 544 F.2d 1219, appears to be a leading case in this area and is quoted with approval in *United States v. Sanchez DeFundora*, 893 F.2d 1173, and *U.S. v. Baggett*, 890 F.2d 1095. In *Dolan*, the court suggested that a variety of circumstances would provide sufficient proof:

"Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence. [Citations omitted.]" 544 F.2d at 1221.

We do not read *Dolan* or *Sanchez DeFundora* as attempting to establish an exclusive and required list of circumstances, all of which must be present. We interpret the listing as illustrative only. In the case at bar, we have proof that the substance was a green vegetation; testimony that $120 was paid for one ounce of it; evidence that secrecy and deviousness was employed in the transaction; and, finally, evidence that everyone involved, including the defendant, referred to and identified the substance as marijuana.

There are a number of other cases in accord with our decision on a factual basis.

In *United States v. Lawson*, 507 F.2d 433, the court held that the following evidence identified the substance in question as cocaine sufficiently to support convictions for conspiracy: The defendant's girlfriend and the purchaser testified that the substance was a white powder; they also testified that the defendant spoke of selling cocaine; the purchaser paid the defendant a substantial amount of cash for the white powder; and the transaction was carried on in secret.

In *United States v. Eakes*, 783 F.2d 499, the substance was cocaine. The evidence indicated that the various conspirators referred to it as cocaine; it was packaged in kilos, as cocaine is normally packaged; the transactions were carried out in secret; and the sellers received large cash payments for the substance. The co-conspirators had successfully imported and sold the substance three times successfully. This evidence was held to be sufficient to go to the jury on the question of whether the substance was cocaine.

In *United States v. Murray*, 753 F.2d 612, 615, the court said:

"Based on the totality of the circumstances and the evidence adduced,

and in particular the identification of the substance as marijuana by [two members of the marijuana distribution organization], the high price charged for the marijuana and the covert nature of the purchases, we hold that the evidence was more than sufficient to support a finding that the substance purchased by [defendant] was marijuana."

In *Murray*, the evidence indicated that one of the witnesses testified that the substance "looked like marijuana" and "smelled like marijuana." 753 F.2d at 614.

In *A.A. v. State*, 461 So. 2d 165, the Florida appellate court upheld an adjudication of delinquency based on possession of marijuana. In that case, the sole evidence identifying the substance as marijuana was the testimony of the arresting officer who testified that, in his opinion, the substance was marijuana.

In the Florida case of *Pama v. State*, 552 So. 2d 309, the defendant was charged with possession of greater than 10,000 pounds of marijuana. The police boarded the defendant's fishing boat and found 234 bales of what they identified as marijuana. The deputies randomly selected 13 bales, which they testified were marijuana. The Florida court held this testimony to be sufficient to identify all 234 bales as being marijuana.

In *State v. Kerfoot*, 675 S.W.2d at 661, the Missouri appellate court commented on the evidence as follows:

"A state's witness, a forensic chemist, testified that the growing plants and the matter seized from the trailer were marijuana. Sheriff Waide testified without objection that the plant material seized from the grain bin, hog shed, and tool shed was marijuana. Police officers can testify that in their opinion a certain substance is marijuana. Such testimony is sufficient, in the absence of a chemical analysis by an expert, to make a submissible case on this issue. [Citation omitted.]"

In *State v. Rubio*, 110 N.M. at 608, the substance in question was cocaine. There was no chemical analysis, and the court held circumstantial evidence to be sufficient to sustain the conviction:

"In this case, there is ample circumstantial evidence supporting the jury's finding that the substance transferred from Askew to defendant was cocaine. In addition to Askew's testimony that the substance was cocaine, there was evidence of the secretive manner in which the transaction was arranged. Askew testified that he asked defendant not to mention cocaine on the telephone, but rather to say simply that he needed to meet with Askew. The price for the substance ranged from $200 to $225 for one-eighth of an ounce. Askew testified that the substance dissolved clearly in water. He also stated that defendant kept coming back for more of the substance.

Finally, there was evidence that Askew had successfully been engaged in the business of selling cocaine for about one year, and had fifteen to twenty regular customers."

The most recent decision to our knowledge is *Swain v. State*, 805 P.2d 684 (Okla. Crim. 1991). The facts of that case are quite similar to the ones presently before this court. In *Swain*, the "buy" was set up by an informant. The defendant had the substance in the trunk of his car and characterized it as "very good stuff." The Oklahoma court, in sustaining a verdict of guilty, characterized the evidence.

"Applying the criteria set forth in *Sanchez DeFundora* to the facts of the present case, we find the following. All three of the State's witnesses opined that the substance found in appellant's trunk *appeared to be marijuana*. Furthermore, the marijuana was described by Bruce Justice as a 'green leafy substance.' Although the price appellant asked for the marijuana was not revealed, the informant stated that he needed to obtain more money before he could purchase the substance. In that appellant kept the substance in a plastic container in the trunk of his car and because the buy was to occur in a parking lot late at night, it can be concluded that said transactions were carried on with secrecy or deviousness. With respect to the final example cited above, appellant repeatedly referred to the substance in question as marijuana. *Also of consequence were the remarks of appellant and his companion that the substance was 'very good stuff', and appellant's assertions that he could get as much marijuana as the informant wanted.*" (Emphasis added.) 805 P.2d at 686.

The decisions reviewed indicate that, under the factual situation presented to us, the evidence was sufficient to permit the jury to conclude the defendant sold Bowley marijuana. We hold that it was sufficient to prove this fact beyond a reasonable doubt.

What we decide here is not revolutionary. In this state, circumstantial evidence has always been sufficient to make a submissible case of criminal activity. The only true yardstick for us to apply is whether the proof is sufficient beyond a reasonable doubt. Our function is not to usurp the jury process, which is at the very heart of our criminal system. We are not willing to become the factfinders by saying that this jury could not have found this defendant guilty under the evidence submitted.

We close by pointing out that the most reliable and least controversial method of proving the identity of a substance is a reliable chemical analysis of that substance. We do not mean to imply that prosecutors should forego obtaining such chemical ev-

idence in the future. Indeed, we suggest that such chemical analysis is preferable. When that analysis is not available or not present, the question of whether the evidence is sufficient must be made on a case-by-case basis. Under the facts of this case, we hold the evidence was sufficient.

Affirmed.

ROBINSON, J., concurring and dissenting: I concur with the legal conclusions of the majority that lay testimony and circumstantial evidence may be sufficient without the introduction of an expert chemical analysis to establish the identity of the substance involved in an alleged illegal drug transaction. However, such evidence must prove the identity of the substance beyond a reasonable doubt. I respectfully disagree with the finding of the majority that the evidence was sufficient in this case.

To sustain a criminal conviction, the defendant must be proven guilty beyond a reasonable doubt of each element of the crime charged. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Flinchpaugh*, 232 Kan. 831, 835, 659 P.2d 208 (1983). When the sufficiency of the evidence is challenged, the standard of appellate review is whether, after reviewing all of the evidence, viewed in the light most favorable to the prosecution, the reviewing court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

Brad Homman of the Dickinson County Sheriff's Office never testified that the substance in issue was marijuana. He was a member of the drug enforcement task force and had special training in drug law enforcement and education. He conducted a field test on the vegetation. However, he never gave an opinion that it was marijuana, nor did he testify as to the results of the field test. The statement that "[Bowley] handed me a plastic bag containing a green vegetation that looked like marijuana" is not evidence that he was of the opinion that it was marijuana.

This is a criminal charge which carries the biggest burden of proof requirement. This burden should not be satisfied by the mere statement of the defendant that it was marijuana he was selling or the statement of the buyer that he wanted to purchase marijuana. A street vendor selling and calling a red flower a rose

does not make it a rose. The evidence viewed in the light most favorable to the prosecution, as presented in this case, is insufficient to withstand the requirements of appellate review.