NOT DESIGNATED FOR PUBLICATION

No. 126,535

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JOSEPH D. CHESTER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed July 19, 2024. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: After the State filed a third motion to revoke his probation following a search of his home, Joseph D. Chester contends the Douglas County District Court abused its broad judicial discretion by revoking his probation and requiring him to serve his previously suspended prison sentence. Despite multiple opportunities, Chester did not adjust to probation and did not comply with the conditions required of him. Now, on this third chance, we agree with the district court that a preponderance of the evidence showed he again violated conditions of his probation. Under the circumstances, we find no abuse of discretion and affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

In keeping with a plea agreement, on December 13, 2019, Chester pled no contest to one count of arson, a nonperson felony, in violation of K.S.A. 21-5812(a)(1)(C), committed on or about June 3, 2019. Based on Chester's criminal history and crime of conviction, the district court sentenced Chester to the presumptive 12 months' imprisonment but granted 24 months' probation. As conditions to Chester's probation, the district court ordered him to obey all laws, use no illegal drugs, submit to random drug and alcohol testing, and complete substance abuse treatment.

Within three months of being placed on probation, Chester's probation officer alleged Chester failed to report on multiple occasions, tested positive for methamphetamine and amphetamine, and was not attending substance abuse treatment. Chester admitted to these allegations, and the district court ordered he serve a three-day "quick dip" sanction.

Following the first sanction, Chester's probation officer continued to allege Chester was violating the conditions of his probation by failing to maintain contact, failing to attend substance abuse treatment, and Chester admitted use of methamphetamine, amphetamine, and benzodiazepine. Chester stipulated to these violations, and the district court ordered he serve another three-day quick dip.

Chester's probation officer then filed a third violation affidavit claiming Chester failed to obey the law based on his recent arrest in Shawnee County. According to the affidavit, Chester was arrested and charged with distributing or possession with intent to distribute 3.5 to 100 grams of methamphetamine or heroin, criminal possession of a firearm by a convicted felon, and possession of drug paraphernalia. Based on these new charges, the State moved to revoke Chester's probation. Initially, the district court planned to postpone resolution of the revocation motion pending conclusion of the new

2

criminal charges. But after a year without resolution of either case, the district court held an evidentiary hearing on the State's motion to revoke Chester's probation.

At the evidentiary hearing, the State presented the testimony of two Topeka Police Department officers, who each testified to executing a search warrant on a Topeka home where Chester was located. While in the home, the officers discovered several different suspected narcotics, including psilocybin mushrooms, candy bars, various pills, methamphetamine, and black tar heroin. One officer testified to discovering Chester's wallet—which included his driver's license—inside a safe located inside the home. The same officer testified the safe also contained suspected pills, psilocybin mushrooms, black tar heroin, and methamphetamine. The officer conducted field tests for methamphetamine and heroin, but he did not note in his written narrative and could not recall whether those tests were positive. But the officer did weigh the suspected narcotics and found the safe contained "86.3 grams of suspected methamphetamine packaging, seven bags, and . . . .8 grams of suspected heroin." The officer testified multiple people were located inside the house but refused to speculate whether the safe was in the control of someone other than Chester.

Following the search, the officer assisted in Chester's interview. During the interview, Chester denied the black tar heroin was his and claimed he "may have found it on the floor, but he wasn't sure how it got in the safe." When the officer asked how many grams of methamphetamine were in the safe, Chester said he did not know, but the two men went on to discuss how much methamphetamine Chester smoked in a day. And when the officer asked Chester if he had mushrooms in the safe, Chester said, "Oh, yeah." Chester clarified that "he had them for a long time and he said he got them to try, but he never got around to trying them."

At the close of evidence, the State argued Chester's acknowledgment of methamphetamine use and his possession of psilocybin mushrooms was sufficient to

3

establish Chester committed a new crime while on probation. The district court agreed and found the preponderance of the evidence showed Chester "is still using drugs, possessing drugs, and in violation of his probation." The district court revoked Chester's probation and ordered he serve his underlying 12-month prison sentence.

Chester appeals.

ANALYSIS

A defendant serving probation has a liberty interest in remaining on probation and may only have it revoked if he fails to comply with the imposed conditions. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). Generally, a district court's decision to revoke probation involves two steps: (1) a factual determination that the probationer has violated a condition of probation; and (2) a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008). Here, Chester only "appeals the first step." He does not challenge the district court's discretion to revoke his probation upon finding he violated a condition of his probation.

The State must establish a probationer violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). And appellate courts review the district court's factual findings for substantial competent evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). "Substantial competent evidence does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact-finder's conclusion." *State v. Morley*, 312 Kan. 702, 712, 479 P.3d 928 (2021). When reviewing a district court's factual findings, we do not reweigh the evidence or reassess credibility of witnesses. 312 Kan. at 713.

4

Chester contends the State did not carry its burden to show he committed the three new crimes alleged: distribution or possession with intent to distribute methamphetamine, criminal possession of a firearm, and possession of drug paraphernalia. Chester adds: "And, seemingly, the State abandoned its arguments as to the criminal possession of a firearm and possession of drug paraphernalia counts, arguing only that it met its burden because [he] acknowledged possession of psilocybin mushrooms and some methamphetamine." And he believes such an acknowledgment is not sufficient to show (1) the suspected methamphetamine was in his exclusive control, and (2) the suspected narcotics tested positive as the identified drug.

Chester's arguments are unpersuasive for a few reasons. First, his arguments presume the State must show he committed all three of the new crimes alleged. But based on the hearing testimony and the district court's findings, neither the State nor the district court used these alleged crimes as the basis for revoking Chester's probation. And they were not required to—the State simply had to show it more likely than not that he violated any single term of his probation. See *State v. Grossman*, 45 Kan. App. 2d 420, 428, 248 P.3d 776 (2011) (revocation on one valid ground is sufficient even if another ground was invalid). Thus, the district court did not err based on its decision to not invoke these other new crimes as a basis for revoking Chester's probation.

Second, Chester's arguments make multiple legal assumptions without supporting authority. Chester seems to argue the State must prove he had exclusive control over the drugs discovered in the safe to establish he committed that new crime. But even in typical criminal proceedings—those outside probation revocations that require more than a preponderance of the evidence—exclusive control over the drug is unnecessary to prove legal possession. For example, the Kansas Criminal Code defines "[p]ossession" as "knowingly having *joint or exclusive control* over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." (Emphasis added.) K.S.A. 21-5111(v); *State v. Washington*, 244 Kan. 652, 654, 772 P.2d

5

768 (1989) ("The possession of a controlled substance may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control.").

Similarly, Chester also assumes the State must show the suspected methamphetamine and psilocybin mushrooms tested positive for each illicit drug to prove he illegally possessed them. But again, he does not support this point with authority, and his argument is contrary to Kansas precedent. This court has long held "proof of the identity of a substance by circumstantial evidence may be sufficient in a drug prosecution where no chemical tests are admitted or available." *State v. Northrup*, 16 Kan. App. 2d 443, 449, 825 P.2d 174 (1992) (analyzing *United States v. Dolan*, 544 F.2d 1219, 1221 [4th Cir. 1976], in its discussion of how various types of circumstantial proof can suffice). Although scientific chemical analysis of a substance will prove the most reliable evidence as to the identity of the substance, such evidence is not the only evidence that will sustain a criminal conviction. *Northrup*, 16 Kan. App. at 448-49; see also *State v. Brazzle*, 311 Kan. 754, Syl. ¶ 4, 466 P.3d 1195 (2020) ("Proof of the identity of a substance by circumstantial evidence may be sufficient to affirm a conviction in a drug prosecution even if no scientific tests results are admitted or available.").

As such, Chester's legal arguments are not persuasive and could be found as failing to brief the issue, because he did not support these points with pertinent authority or show why his point is sound in the face of contrary authority. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

Finally, Chester's arguments are not persuasive because substantial competent evidence supports the district court's finding that "[Chester] is still using drugs, possessing drugs, and in violation of his probation." As for his possession of the methamphetamine located inside the safe, the record shows Chester seemingly admitted the methamphetamine was his—the officer testified, "I asked him how many grams of

meth he had in the safe, and he said honestly, he didn't know." Then, Chester admitted to using methamphetamine daily. The officer testified, "I asked him about smoking a bowl a day and I asked him how much he put in a bowl, and he said maybe half a gram." Based on this testimony, Chester admitted to using methamphetamine and implied the methamphetamine was his in response to the question from the officer. Similarly, he admitted to possessing the mushrooms despite never using them. The officer testified, "I asked him if he had some shrooms in there, and he said, Oh, yeah, and I asked him where he got those, and he said that he had them for a long time and he said he got them to try, but he never got around to trying them."

In addition to the alleged narcotics, the record shows Chester's wallet, which included his identifying driver's license, was found inside the safe. See *Washington*, 244 Kan. at 645 ("The possession of a controlled substance may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place in which he has some measure of access and right of control."). Given Chester's wallet was located where the drugs were kept, substantial competent evidence supports the finding that Chester must have had some measure of access and right of control over the safe and its contents.

Substantial competent evidence also supports the district court's findings that the suspected narcotics were proven to be the identified drugs based on circumstantial evidence presented at the hearing. Although the officer who tested the substances could not say for certain whether the suspected drugs tested positive, he "believe[d] they were both positive." At the time of the hearing, the officer was a 12-year veteran of the Topeka Police Department and trained in narcotics field testing. And like the circumstantial evidence identified in *Brazzle*, the record shows the State presented evidence that the substance was """used in the same manner as the illicit drug,""" the evidence was handled """with secrecy,""" and evidence that the """substance was called by the name of the

7

illegal narcotic by the defendant or others in his presence. [Citations omitted.]"'" 311 Kan. at 769.

Here, the testifying officer referred to the methamphetamine as "meth" and psylocibin mushrooms as "shrooms," and Chester responded as if he recognized and used those drugs. And given Chester's previous admissions of methamphetamine use, it seems logical to assume Chester was referencing the same drugs as the officer. Additionally, the drugs were kept in a safe, as if to be handled with secrecy, and the methamphetamine was packaged in multiple separate baggies. See *State v. Slusser*, 317 Kan. 174, 177, 527 P.3d 565 (2023) (identifying "items commonly associated with drug distribution . . . as plastic baggies, a scale, multiple cell phones, or large sum of cash"). In an Eighth Circuit Court of Appeals case, the court considered the good-faith exception to warrantless searches and found facts may enable an officer to logically infer a drug dealer would store contraband in their residence. *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021); see also *United States v. Carpenter*, 341 F.2d 666, 671-72 (8th Cir. 2003) (stating it was not "entirely unreasonable" for an officer to rely on the warrant because, "[a]s a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence").

The district court found the State established Chester violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true. See *Lloyd*, 52 Kan. App. 2d at 782. And as shown above, substantial competent evidence supports the district court's conclusion that Chester violated the conditions of his probation by "still using drugs [and] possessing drugs." Chester admitted to using methamphetamine, which also infers possession, and he admitted to possessing the psilocybin mushrooms. Both drugs were discovered in a safe with Chester's identification.

But in addition to the evidence supporting the district court's finding that Chester used and possessed the drugs, the record also shows the officers discovered a distribution amount of methamphetamine in the same safe. According to the officer, he weighed 86.3 grams of methamphetamine amongst the seven baggies found in the safe. Fact-finders may infer a defendant's intent to distribute based on a defendant's possession of a large quantity of narcotics. *State v. Strong*, 317 Kan. 197, 206, 527 P.3d 548 (2023); see also *State v. Holder*, 314 Kan. 799, 806, 502 P.3d 1039 (2022) ("[A] defendant's possession of a large quantity of narcotics certainly may support an inference that the defendant intended to distribute the narcotics."). But even more compelling, under K.S.A. 21-5705(e)(2), "a jury must presume that a defendant who possessed at least 3.5 grams of methamphetamine did so with the intent to distribute it, unless the defendant can rebut the presumption with affirmative evidence to the contrary." *Strong*, 317 Kan. at 198 (citing *Holder*, 314 Kan. at 805).

As such, substantial competent evidence supports the district court's findings that Chester violated the conditions of his probation by using drugs, possessing drugs, and possessing an amount of drugs that establishes his intent to distribute them. The district court did not err in finding the State met its burden of proving he failed to obey the law while on probation, and as a result, the district court did not abuse its discretion in revoking Chester's probation and imposing his underlying prison sentence.

Affirmed.